In re JOHN H. REDMOND, JR., et al.; JOHN H. REDMOND, Petitioner, v. CAMILLA C. REDMOND, Respondent.

St. Louis Court of Appeals, June 19, 1905.

1. HUSBAND AND WIFE: Custody of Children. Where a husband and wife have separated and it is shown that the wife on account of superior fitness and means is the better able to care for their children, it is proper that their custody should be awarded to her, although the husband is a moral man and devoted to their welfare.

2. ———: ———. Nevertheless, in such case, in the absence of proof that the husband was immoral or addicted to bad habits,

In re Redmond v. Redmond.

he should have the right to visit such children at intervals, on conditions provided by the court, although he contributed nothing to their support.

Habeas Corpus for the Children of Petitioner.

COST ADJUDGED AGAINST THE PETITIONER.

BLAND, P. J.—The petitioner and respondent were married in the city of St. Louis, November 25, 1891. They continued to live together as husband and wife until February, 1901, when they separated. There were five children born of the marriage, John Henry, age thirteen years, Mary Naomi, age eleven years, Lewis Arthur, age nine years, Camilla Ann, age seven years, and Charles Francis, age five years, all living and all in the custody of the mother. The petition alleges that the three older children have been placed by their mother in close confinement in schools away from Springfield, Missouri, where both petitioner and respondent reside, and that petitioner is denied the privilege of visiting or seeing them, and that the two younger children are kept very closely confined at the home of Mrs. Herr, the mother of respondent, with whom she and the children make their home, and that petitioner is not permitted to see or communicate with either of them. It is further alleged that respondent has taught all the children to disrespect the petitioner, their father, and instructed them to run from him when he undertakes to approach them. The prayer of the petition is that the children be discharged from their alleged unlawful confinement.

The return of the respondent, to the writ of habeas corpus issued by us, alleges that John Henry, through the efforts of respondent, in the spring of 1902, entered Conception College, at Conception, Missouri, for a term of five years on a free scholarship, which includes tuition, board and washing, and that his other expenses

at school are being defrayed by the respondent; that Mary Naomi, through the influence and efforts of respondent, is in Sacred Heart Convent, at St. Charles, Missouri, under a free scholarship, for ten years, and that her other expenses are being paid by respondent; that in the year 1903, Camilla Ann entered the same convent and is being there educated at the expense of respondent; that the two younger children are with the respondent at her home in Springfield, Missouri, the older one in school, the younger being too young to send to school. The return denied the other allegations of the petition and alleged that respondent was compelled to separate from the petitioner on account of his intemperance, his profligacy, and his cruel and barbarous treatment of respondent and their children, and on account of his failure to provide them with the common necessities of life; alleges that petitioner is an unfit person to have the care, custody, training and education of the children and has no proper home to which to take them; alleges that he has tried to inculcate in the minds of the older children the idea that their mother is a faithless, bad woman; that he has dogged the tracks of respondent since the separation and upon divers occasions has openly insulted her on the streets of Springfield, in the presence of other persons; that he has refused to contribute to the maintenance of any of said children or to pay any of the expenses of their sickness and has refused to contribute anything to their support. The petitioner is also charged with immoral conduct and with being a habitual drunkard.

A commissioner was appointed by us 'to take testimony. Seven hundred pages of typewritten testimony has been taken and filed in the cause. This testimony we have carefully perused, also the many letters and telegrams filed as exhibits. The testimony is too voluminous to be even summarized within the scope of an opinion of reasonable length. It shows that petitioner and

113 app—23

respondent are members of the same church (Catholic); that both sustained good characters among their neighbors and acquaintances; that petitioner is not a drunkard nor an immoral man; that he has love for his wife and children; that he has been an unsuccessful man in business, has totally failed in all of his business ventures, and tends to show that but for aid furnished the family while living together, by Mrs. Herr, respondent's mother, the family would have been in very straightened circumstances, and possibly without the absolute necessities of life. The testimony also shows that petitioner is uncouth in his manner and is lacking in refinement; on the other hand the evidence shows that respondent is a lady of culture and refinement; that she is a pure, good woman, a devoted and sensible mother and that she is industrious, energetic and intelligent. Just why she separated from her husband is not made altogether clear, yet we think the cause or causes are discernible between the lines of her testimony, and while we do not think there was an adequate cause for the separation, there was much provocation for a woman of her type to separate from Mr. Redmond, but we are not called upon to adjudicate this feature of this unfortunate affair. There is much evidence to show that without the shadow of a cause, petitioner since the separation has contracted the disease of jealousy, and spurred on by this morbid sentiment has on several occasions insulted his wife and treated her with gross indignity. The evidence shows that he has not contributed as much as he might and should have contributed for the support of his children, and that he has contributed nothing whatever toward the support of his wife since the separation, but respondent is in part to blame for this neglect, for she has offered petitioner such indignities as would stir up resentment in the mind of any man of spirit, and there is much evidence showing that, while she has not deliberately and purposely taught her children to disrespect their father, her training of them has been such as to al-

In re Redmond v. Redmond.

ienate their affections from him, and she has, according to all the evidence, at almost all times and under all circumstances, denied the petitioner the privilege of seeing, conversing with or even corresponding through the mails with his children. According to her evidence this conduct was induced through fear that petitioner would abduct the children, as the evidence shows he had threatened to do, and for the further reason that he would not contribute to their support, though often asked to do so by his wife. We think the evidence shows that want of confidence, ungrounded fears, and unreasonable suspicion of each other has been the fruitful source of most of the difficulties and trouble that has arisen between the parties since the separation, and it is a great pity that two good people, as the evidence shows both to be, after plighting their faith to each other in wedlock and after bringing into the world five children, should stray so far apart and lose their confidence in each other, without any real or substantial cause. More is the pity when the children are brought into the controversy. It is with the children we have to deal in this proceeding. The legal rights, the love and jealousy, the wishes and even the welfare of petitioner and respondent must be subordinated to the interest of the children, for the welfare of the latter should be the guiding star in reaching a conclusion in this proceeding. It is not difficult, under the evidence, to arrive at a conclusion in respect to the disposition that should be made of the children nor to decide to which of the parties their custody should be awarded. The respondent is an only child of Mrs. Herr, who has considerable means, and has a good comfortable home for herself and children with her mother. As alleged in her return to the writ, the three older children are in school, under the arrangements as stated in the return, and the two younger are with her at her home in Springfield. During the four years of her separation, she has proved not only her ability and willingness to properly rear, train and educate her children, but also that she

possesses in an eminent degree superior qualities as a mother in the rearing of children. The evidence shows that few mothers, furnished with ample fortunes, have done so well in bringing up their children as has this good woman by her energy, industry and superior intelligence. The evidence also shows that Mrs. Herr, the grandmother, is devoted to these children. They are undoubtedly in good hands. We do not think the evidence shows that Mr. Redmond is a drunkard, an immoral man or that he is an unfit person to have the custody of his children, but it does show that he is not prepared to take care of them. He has a house but no housekeeper. He testified that if their custody should be awarded to him he would have to hire a housekeeper to look after their wants. We can never consent to the substitution of a hireling to look after these children in the place of their mother and we do not think that Mr. Redmond really desires that this should be done. What he especially asks and what he is clearly entitled to, is that he be recognized as the father of his children by those in whose custody they are and that he be granted the privilege of seeing them and the opportunity of gratifying his affection for them and of cultivating theirs for him. It would be cruel and inhuman to deny him this right. But he ought to contribute something more than he has hitherto contributed to their support and education. By doing so, he will, in part, discharge his legal and moral obligation to support his children and the more endear both his wife and children to him. But we do not make it a condition that to see his children he shall contribute to their support. His right to see them is a natural right that he has not forfeited.

Our conclusion is that respondent retain the custody and control of the five children, that she have the direction and supervision of their education without let or interference on the part of petitioner, but that he shall be at all proper times, as often as once a week, if respondent will give her consent, have the privilege of

visiting the children when at respondent's home and that his intercourse with the children upon such visits shall be free and not unnecessarily interrupted and that such visits may be continued at any one time for at least two hours. If the respondent will not give her consent that petitioner may visit his children at her home, then it is ordered that she, at least once a week, if petitioner shall require it, permit the children, when at home in Springfield, to be taken by petitioner to his home in the same city and that they may visit him for a period not exceeding three hours. We also think the petitioner should have the privilege of writing to and receiving letters from his children when away from home at college and that respondent should give instructions to the superintendent of such schools to permit the children to correspond with their father and to see him at seasonable hours when he calls at said schools for the purpose of paying them a visit.

The costs of this proceeding are adjudged against the petitioner. *Nortoni, J.,* concurs, *Goode, J.,* not sitting.